**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| MICHAEL STUDIVENT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10CV144 |
| | ) | |
| VICKIE HUSKEY, in official and | ) | |
| individual capacity, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

The instant case comes before the undersigned United States Magistrate Judge for a recommended ruling on Defendant's Motion to Dismiss (Docket Entry 25). (See Docket Entry dated Jan. 23, 2013.) For reasons that follow, the Court should grant the instant Motion.

**I.  Background**

The pro se Amended Complaint identifies Plaintiff Michael Studivent as a "[l]aw enforcement officer" (Docket Entry 4, ¶ 2) and Defendant Vickie Huskey as "the Company Police Administrator for The State of North Carolina, Criminal Justice Education and Training Standards Commission, Criminal Justice Standards Division" (id. ¶ 1).[1]  According to the Amended Complaint, Plaintiff's "employment was terminated [in November 2006] without due cause by Lankford Protection Service . . . ."  (Id. ¶ 2.)  The Amended

_____

[1] The Amended Complaint also named other Defendants (see Docket Entry 4 at 1), but the Court previously dismissed all claims against them (see Docket Entry 21 at 3-4).

Complaint states that Plaintiff could not "secure a new position in [l]aw enforcement" (id.), despite his qualifications (id. ¶¶ 6-7).

Further, the Amended Complaint alleges that Plaintiff obtained a copy of the separation letter that Samuel Lankford, the co-owner of Plaintiff's former employer, submitted to North Carolina's Criminal Justice Education and Training Standards Commission. (Id. ¶¶ 11, 15.) That letter indicated the following: "'[Plaintiff] would not follow the rules and guidelines as set forth under [G]eneral Statute 74E, he always stepped outside his area of authority, abused company equipment and privileges. [Plaintiff] was untruthful and failed to show up for his assigned shift.'" (Id. ¶ 16.)[2] It continued: "'[Plaintiff] continually broke the

_____

[2] "General Statute 74E" refers to North Carolina's "Company Police Act [which] regulates private police agencies, giving them authority similar to municipal or county police forces." Pinnacle Special Police, Inc. v. Scottsdale Ins. Co., 607 F. Supp. 2d 735, 740 (E.D.N.C. 2009) (citing N.C. Gen. Stat. §§ 74E-2(a) (which established the "Company Police Program") and 74E-6(c) (which authorized company police officers, while on duty, "to make arrests" in prescribed areas)). "The purpose of [the Company Police Act] is to ensure a minimum level of integrity, proficiency, and competence among company police agencies and company police officers." N.C. Gen. Stat. § 74E-2(a). Accordingly, the Company Police Act empowers North Carolina's Attorney General, inter alia, "[t]o deny, suspend, or revoke . . . a commission as a company police officer for failure to meet the requirements of or comply with [the Company Police Act] or a rule adopted under [it], in accordance with [North Carolina's Administrative Procedure Act]," N.C. Gen. Stat. § 74E-4(5), "[t]o delegate the authority to administer [the Company Police Act]," N.C. Gen. Stat. § 74E-4(7), "[t]o require that the Criminal Justice Standards Division provide administrative support staff for the Company Police Program," N.C. Gen. Stat. § 74E-4(8), and "[t]o adopt rules needed to implement [the Company Police Act], in accordance with [North Carolina's Administrative Procedure Act]," N.C. Gen. Stat. § 74E-4(9); see

-2-

rules and regulations of 74E. He always had an excuse for his actions which was totally inadequate and once reprimanded he continued to act like a "loose [c]annon" totally out of control and disrespectful to his profession.'" (<u>Id.</u> ¶ 18.)

The Amended Complaint, which characterizes those comments as "defamatory" (<u>id.</u> ¶ 11) and as "lies" (<u>id.</u> ¶ 12), then asserts:

> [Defendant] used her authority and State position to solidified [sic] [] Lankford's ability to make the unfair, untrue, unjust allegation about [Plaintiff] and to insure it would go unchallenged. She endorsed his actions by literally signing the document. With [Defendant's] signature and stamp on the document, no one would never [sic] ever have a thought of considering [Plaintiff] for employment. She was telling everyone, basically sending the message, don't even ask about him! In this way she insured [Plaintiff] could never get any due process and violated [his] constitutional rights. [Plaintiff] was told by [Defendant] herself, the only way [he] could get an administrative hearing was if a department showed interest in hiring [him], and then and only then by State law, [he] could get a hearing to address Lankford's claims.

(<u>Id.</u> ¶ 21.)

According to the Amended Complaint, Plaintiff "hold[s] the State of North Carolina and the Attorney General's Office

---

<u>also</u> 12 N.C. Admin. Code 2I.0101 et seq. (setting out rules adopted to implement Company Police Act). Moreover, the Company Police Act provides that "[a]pplicants for commission as a company police officer and a commissioned company police officer must meet and maintain the same minimum preemployment and in-service standards as are required for State law enforcement officers by the North Carolina Criminal Justice Standards Commission . . . ." N.C. Gen. Stat. § 74E-8; <u>see also</u> 12 N.C. Admin. Code 9C.0301 (mandating that "[e]very person employed or appointed by the State or any political subdivision thereof as a criminal justice officer shall be certified as prescribed by the[] Rules [of North Carolina's Criminal Justice Education and Training Standards Commission]").

responsible for the actions of [Defendant] and its lack of **'due process'** which allowed . . . [Defendant] to violate [Plaintiff's] civil rights." (<u>Id.</u> ¶ 14 (emphasis in original).) As a result, he has requested "damages and a return to status quo of all certifications before damages were done," as well as an order that "all negative records [be] expunged from [his] service record in regards to this matter." (<u>Id.</u> § IV. A.) Because Plaintiff proceeded as a pauper, the Court screened the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2) and ordered that the case could proceed to service of process only on Defendant and only as to a claim against her under 42 U.S.C. § 1983 "in her individual and official capacities for deprivation of due process in violation of the Fourteenth Amendment to the United States Constitution." (Docket Entry 21 at 3-4.) Defendant subsequently filed the instant Motion to Dismiss (Docket Entry 25), as to which Plaintiff responded (Docket Entry 34), Defendant replied (Docket Entry 35), and Plaintiff filed an unauthorized sur-reply (Docket Entry 36).

## II.  Preliminary Matters

### A.  Eleventh Amendment Immunity

Defendant seeks dismissal of Plaintiff's Section 1983 claim for lack of subject matter jurisdiction based on immunity under the Eleventh Amendment to the United States Constitution. (Docket Entry 26 at 4-6.) The United States Supreme Court "has drawn upon principles of sovereign immunity to construe [that] Amendment to

-4-

establish that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990) (internal quotation marks omitted). Moreover, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (internal citation omitted). However, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004). The Eleventh Amendment thus bars any damages claim against Defendant in her official capacity, but not the requested injunctive relief.[3]

---

[3] Defendant also claims immunity under the Company Police Act, which states that "[n]either the Attorney General nor any of the Attorney General's employees may be held criminally or civilly liable for any acts or omissions in carrying out the provisions of [the Company Police Act]," N.C. Gen. Stat. 74E-11. (See Docket Entry 26 at 6.) However, "[i]t is well established that State statutes . . . providing for immunity of State agencies and their employees are inapplicable in Section 1983 proceedings. Rather, the federal law of immunity applies . . . ." George v. Kanawha Cnty. Sheriff's Dep't, Civil Action No. 2:08-0141, 2009 WL 273230, at *6 (S.D.W. Va. Feb. 3, 2009) (unpublished) (citing Howlett v. Rose, 496 U.S. 356, 383 (1990), and Owen v. City of Independence, 445 U.S. 622, 647 (1980)); see also B.M.H. by C.B. v. School Bd. of City of Chesapeake, 833 F. Supp. 560, 564 (E.D. Va. 1993) (observing that "Supreme Court, relying upon the supremacy clause, expressly noted that 'conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 cannot be immunized by state law'" (internal brackets and ellipses omitted) (quoting Howlett, 496 U.S. at 376)). Defendant further asserts

-5-

## B. Statute of Limitations

Defendant next argues that the applicable statute of limitations bars Plaintiff's Section 1983 claim. (See Docket Entry 26 at 10-11.) "Because there is no federal statute of limitations applicable to suits under § 1983, . . . the applicable provision limiting the time in which an action under § 1983 must be brought must be borrowed from the analogous state statute of limitations." National Adver. Co. v. City of Raleigh, 947 F.2d 1158, 1161 (4th Cir. 1991) (internal brackets and quotation marks omitted). The analogous North Carolina statute provides a limitations period of three years. See N.C. Gen. Stat. § 1-52(5); see also National Adver., 947 F.2d at 1161-62 (ruling that N.C. Gen. Stat. § 1-52(5) applies to Section 1983 claims).

"While the statutory limitations period for § 1983 actions is borrowed from state law, the time of accrual of a civil rights action is a question of federal law." National Adver., 947 F.2d at 1162 (internal quotation marks omitted). "Federal law holds that the time of accrual is when plaintiff knows or has reason to know of the injury which is the basis of the action." Cox v. Stanton,

---

that she should receive absolute immunity under federal law. (Docket Entry 26 at 5-6.) "The proponent of a claim to absolute immunity bears the burden of establishing the justification for such immunity." Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 432 (1993). Defendant has not shown how her duties as Company Police Administrator met the standard for extending absolute immunity to administrative officials in Butz v. Economou, 438 U.S. 478, 508-17 (1978). (See Docket Entry 26 at 5-6.)

529 F.2d 47, 50 (4th Cir. 1975).  Controlling authority further provides that:

> [A] motion to dismiss filed under Federal Rule of [Civil] Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred.  But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6).  This principle only applies, however, if <u>all facts necessary to the affirmative defense clearly appear on the face of the complaint</u>.

<u>Goodman v. Praxair, Inc.</u>, 494 F.3d 458, 464 (4th Cir. 2007) (internal quotation marks omitted) (emphasis added).

Defendant contends that "Plaintiff knew or reasonably should have known about the grounds for his termination [by Lankford] on or before February 7, 2007" (Docket Entry 26 at 11), such that the limitations period for Plaintiff's Section 1983 claim passed before he instituted this action on February 19, 2010 (<u>id.</u>).  Plaintiff's Amended Complaint indicates that Lankford submitted the separation letter to Defendant on February 19, 2007.  (Docket Entry 4, ¶ 15.) Accordingly, based on the allegations in the Amended Complaint, the limitations period for a claim that Defendant violated Plaintiff's rights through her handling of Lankford's letter could not have begun to run before February 19, 2007, when Defendant allegedly received it.  Plaintiff commenced this case on February 19, 2010,

exactly three years later.[4]  Defendant thus cannot establish a limitations defense on the face of the Amended Complaint.

## C.  Insufficient Service of Process

According to Defendant, Plaintiff failed to make timely and proper service.  (Docket Entry 26 at 11-16.)  In the event the Court does not dismiss Plaintiff's action for failure to state a claim, the Court should extend the time for making service, see Fed. R. Civ. P. 4(m), and should give Plaintiff a chance to perfect any heretofore insufficient service, see Miller v. Northwest Region Library Bd., 348 F. Supp. 2d 563, 567 (M.D.N.C. 2004) (Beaty, J.).

## III.  Failure to State a Claim

Defendant argues that the Amended Complaint fails to state a Section 1983 claim for deprivation of due process against her in either her official or individual capacities (Docket Entry 26 at 17-20) and, alternatively, that the doctrine of qualified immunity requires dismissal of the individual capacity claim (id. at 7-10). As shown below, analysis of these arguments overlaps.

---

[4] Defendant contends that, even if the limitations period began running on February 19, 2007, the Court should rule this action time-barred "because a leap year existed in 2008 requiring . . . fil[ing] by . . . February 18, 2010 . . . to comport with the three-year statute of limitations."  (Docket Entry 26 at 11.) Defendant offers no authority to support this view.  (See id.) Moreover, persuasive authority provides that, "when a statute of limitations is measured in years, the last day for instituting the action is the anniversary date of the relevant act.  The anniversary date is the 'last day to file even when the intervening period includes the extra leap year day.'"  United States v. Hurst, 322 F.3d 1256, 1260 (10th Cir. 2003) (quoting United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2000)).

-8-

Under Federal Rule of Civil Procedure 12(b)(6), a complaint falls short as a matter of law if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations omitted) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[5]

On the other hand, "[q]ualified immunity from § 1983 claims protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Doe ex rel. Johnson v. South Carolina Dep't of

---

[5] "[D]etermining whether a complaint states on its face a plausible claim for relief . . . requires the [Court] to draw on its judicial experience and common sense." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009). Moreover, although pro se litigants still must receive the benefit of liberal construction, Erickson v. Pardus, 551 U.S. 89, 94 (2007), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted); accord Atherton v. District of Columbia Office of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A pro se complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a pro se complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 679, respectively)).

-9-

<u>Soc. Servs.</u>, 597 F.3d 163, 169 (4th Cir. 2010) (internal quotation marks omitted). Under this doctrine, an official "will be granted immunity unless (1) the facts that a plaintiff has alleged or shown make out a violation of a constitutional right, and (2) the right at issue was clearly established at the time of the alleged misconduct." <u>Id.</u> (internal citations and quotation marks omitted). The discussion which follows therefore first considers whether the Amended Complaint sufficiently alleges a due process violation (a matter that affects the viability of both the official and individual capacity claims) and then addresses whether any asserted due process right was clearly established at the time of Defendant's alleged violation thereof (a matter that affects the viability of the individual capacity claim).

## A. Violation of a Constitutional Right

As detailed in Section I, the Amended Complaint, liberally construed, alleges that Defendant violated Plaintiff's due process rights by making false defamatory information in Lankford's letter available to law enforcement agencies without affording Plaintiff a name-clearing hearing, resulting in damage to his future employment prospects and the loss of his general certification as a law enforcement officer. In order to state a procedural due process claim of this sort, a plaintiff must show "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed

-10-

were constitutionally inadequate." <u>Kendall v. Balcerzak</u>, 650 F.3d 515, 528 (4th Cir. 2011) (internal quotation marks omitted). Plaintiff has failed to make such a showing.

    i. Deprivation of Cognizable Liberty or Property Interest

"[W]hen 'a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him,' a liberty interest is implicated." <u>Bannum, Inc. v. Town of Ashland</u>, 922 F.2d 197, 201 (4th Cir. 1990) (quoting <u>Wisconsin v. Constantineau</u>, 400 U.S. 433, 437 (1971)). However, in the employment context, "in order to deprive an employee of a liberty interest, a <u>public employer's</u> stigmatizing remarks must be 'made in the course of a discharge or significant demotion.'" <u>Ridpath v. Board of Governors Marshall Univ.</u>, 447 F.3d 292, 309 (4th Cir. 2006) (emphasis added) (quoting <u>Stone v. University of Md. Med. Sys. Corp.</u>, 855 F.2d 167, 172 n.5 (4th Cir. 1988)). As the United States Court of Appeals for the Fourth Circuit has observed:

> *Stone* and the decisions it relied on therein followed the Supreme Court's decision in *Paul v. Davis*, 424 U.S. 693 [] (1976), explaining its earlier decision in [*Board of Regents of State Colls. v.*] *Roth*[, 408 U.S. 564 (1972)]. The Plaintiff in *Paul* had asserted a § 1983 claim based on allegations that the defendant-police chief had included the plaintiff's name and photograph on a flyer of "Active Shoplifters" distributed for posting by local merchants, thus branding him as a criminal and seriously impairing his future employment opportunities. In rejecting this claim as one for defamation alone, the Supreme Court characterized its previous decision in *Roth* as recognizing that governmental action defaming an individual *in the course of declining to rehire him* could entitle the person to notice and an opportunity to be heard as to the defamation. The *Paul* Court deemed the

-11-

language of *Roth* to be inconsistent with any notion that a defamation perpetrated by a government official but unconnected with any refusal to rehire would be actionable under the Fourteenth Amendment. Accordingly, under what is sometimes referred to as its "stigma plus" test, the *Paul* Court instructed that no deprivation of a liberty interest occurs when, in the course of defaming a person, a public official solely impairs that person's *future* employment opportunities, without subjecting him to a *present* injury such as termination of government employment.

Id. at 309 n.16 (internal citations and quotation marks omitted) (emphasis in original).

In the instant case, the Amended Complaint alleges that Defendant made available to law enforcement agencies false defamatory information about Plaintiff's firing that damaged his future employment opportunities, but the related present injury identified in the Amended Complaint concerns not a loss of public employment, but rather of private employment. In other words, the Amended Complaint alleges that Plaintiff suffered "stigma" from Defendant's (and, by extension, the state's) actions, but not that Plaintiff suffered any "plus" from Defendant's (or the state's) actions, because neither Defendant nor any other state official terminated Plaintiff's employment; Lankford, a non-state actor, did (see Docket Entry 21 at 3-4 (dismissing claims against Lankford-related defendants "for want of sufficient allegations of state action")). The Amended Complaint thus does not identify a liberty interest sufficient to support a due process claim.

-12-

Alternatively, the Amended Complaint (if liberally construed) alleges that, because Defendant wrongfully impeded Plaintiff's attempts to find new employment as a law enforcement officer, his "[g]eneral [c]ertification . . . could not be save [sic] and it expired in February 2008." (Docket Entry 4, ¶ 2.) By "general certification," the Amended Complaint appears to refer to "the authority granted by the North Carolina Criminal Justice Education and Training Standards Commission to those individuals who meet the minimum requirements [to serve] as a sworn law enforcement officer pursuant to Title 12, Chapter 9B of the North Carolina Administrative Code." 12 N.C. Admin. Code 2I.0104(4); see also 12 N.C. Admin. Code 9C.0303(b) ("The Commission shall certify as a probationary officer a person meeting the minimum standards for criminal justice employment when the person's employing agency submits a completed Report of Appointment . . . ."), 9C.0304(a) ("The Commission shall grant an officer general certification if evidence is received . . . that an officer has successfully completed the training requirements of 12 [N.C. Admin. Code] 9B.0400 within the officer's probationary period and that the officer has met all other requirements . . . ."). Once awarded, said certification remains in force (unless suspended or revoked, see 12 N.C. Admin. Code 9A.0203, 9A.0204, 9A.0206) if an officer (while meeting in-service training requirements) maintains continuous employment "in good standing" with a law enforcement

-13-

agency or, having separated "in good standing" from a law enforcement agency, obtains re-employment with a law enforcement agency "within one year." 12 N.C. Admin. Code 9C.0304(e).

"[A] state-issued license for the continued pursuit of the licensee's livelihood, renewable periodically on the payment of a fee and revocable only for cause, creates a property interest in the licensee." Richardson v. Town of Eastover, 922 F.2d 1152, 1157 (4th Cir. 1991). Plaintiff has not cited (and the undersigned Magistrate Judge has not found) any authority establishing that a certification of the sort at issue here represents such a property interest or that the denial of a name-clearing hearing in a manner that causes such a certification to lapse constitutes the deprivation of that property interest. However, assuming that Plaintiff's general certification as a law enforcement officer qualifies as a cognizable property interest and that Defendant deprived Plaintiff of that interest by wrongfully impeding his ability to secure re-employment within 12 months of his firing, the question remains whether the process available to Plaintiff in North Carolina for the vindication of that property interest was "constitutionally inadequate," Kendall, 650 F.3d at 528.[6]

---

[6] This same hurdle obviously also would remain if the Court deemed Defendant's failure to grant Plaintiff a name-clearing hearing a deprivation of a protected liberty interest.

-14-

## ii. Adequacy of Available Procedures

"Procedural due process provides merely a guarantee of fair procedures . . . ." Id. (internal quotation marks omitted). In other words, "i]t is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim." Cotton v. Jackson, 216 F.3d 1328, 1331 (11th Cir. 2000). Accordingly, "the state must have the opportunity to remedy the procedural failings of its subdivisions and agencies in the appropriate fora - agencies, review boards and state courts before being subjected to a claim alleging a procedural due process violation." Id. (internal quotation marks omitted). "If adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process." Id.

As Defendant's brief in support of its instant Motion observes, the Amended Complaint "fail[s] to allege or show that [Plaintiff] applied for an administrative hearing and fail[s] to allege or show that he took any action seeking an administrative hearing." (Docket Entry 26 at 9.) In his Response to the instant Motion to Dismiss, Plaintiff addresses this argument solely by pointing to the allegation in the Amended Complaint (see Docket Entry 4, ¶ 21)) that Defendant told Plaintiff "that the only way [he] could get a hearing was if a department went through the

-15-

hiring process for [him]." (Docket Entry 34 at 36.)[7] This contention misses the distinction between Plaintiff's act of requesting a name-clearing hearing from Defendant and Plaintiff's failure to seek an administrative hearing challenging Defendant's refusal to grant Plaintiff a name-clearing hearing.

In fact, North Carolina law afforded Plaintiff a number of options to challenge Defendant's alleged deprivation of any rights Plaintiff may have had regarding Lankford's letter. First, North Carolina's Administrative Procedures Act ("NCAPA") provides that, "[o]n request of a person aggrieved, an agency shall issue a declaratory ruling as to the <u>validity of a rule or as to the applicability to a given state of facts</u> of a statute administered by the agency or <u>of a rule or order of the agency</u>." N.C. Gen. Stat. § 150B-4(a) (emphasis added). A "rule" for purposes of the NCAPA includes "any agency regulation, standard, or statement of general applicability that implements or interprets an enactment of

---

[7] Plaintiff's 45-page Response exceeds the 20-page limit this Court's Local Rules impose on such filings, <u>see</u> M.D.N.C. LR7.3(d). Furthermore, rather than performing the required functions of a brief, <u>see</u> M.D.N.C. LR7.2(a), it improperly focuses unduly on matters not at issue in the instant Motion (<u>see</u> Docket Entry 35 at 3-13, 16-22) and repeats argumentatively the generalized criticisms the Amended Complaint asserts about Defendant (and/or the state) (<u>see</u> <u>id.</u> at 2-3, 13-16, 23-29, 33-36, 40-43). Finally, Plaintiff attached to his Response 22 exhibits (<u>see</u> Docket Entries 34-1 - 34-22), which this Court generally could not consider in connection with a legal sufficiency challenge, <u>see</u> Fed. R. Civ. P 12(d). Notwithstanding these deficiencies, the undersigned Magistrate Judge carefully has reviewed Plaintiff's Response (including all the attachments) to ensure that, as a pro se litigant, he received the full benefit of liberal construction principles.

-16-

the General Assembly or Congress or a regulation adopted by a federal agency or that describes the procedure or practice requirements of an agency." N.C. Gen. Stat. § 150B-2(8a). Plaintiff thus could have requested a declaratory ruling from the North Carolina Criminal Justice Standards Division (which houses the Company Police Program, see 12 N.C. Admin. Code 2I.0101) as to the validity of Defendant's alleged practice of maintaining for inspection by law enforcement agencies false defamatory information about a law enforcement officer without giving that officer a chance to contest that information.

North Carolina law would have required that agency to respond within 30 days by "mak[ing] a written decision to grant or deny the request . . . [with any failure to act within such time] deemed a decision to deny the request." N.C. Gen. Stat. § 150B-4(a1)(1). "If the agency denies the request, the decision is immediately subject to judicial review in accordance with Article 4 of th[e] [NCAPA]." N.C. Gen. Stat. § 150B-4(a1)(2). "If the agency grants the request, the agency shall issue a written ruling on the merits within 45 days . . . [and that] ruling is subject to judicial review in accordance with Article 4 of th[e] [NCAPA]." N.C. Gen. Stat. § 150B-4(a1)(3). "If the agency fails to issue a declaratory ruling within 45 days, the failure shall be deemed a denial on the merits, and the person aggrieved may seek judicial review pursuant to Article 4 of th[e] [NCAPA]." N.C. Gen. Stat. § 150B-4(a1)(4).

-17-

Alternatively, Plaintiff could have initiated a "contested case" under the NCAPA, defined as "an administrative proceeding . . . to resolve a dispute between an agency and another person that involves the person's rights, duties, or privileges, including licensing," N.C. Gen. Stat. § 150B-2(2). In order to commence a contested case, an individual need only "fil[e] a petition with the Office of Administrative Hearings," N.C. Gen. Stat. § 150B-23(a), and either pay the filing fee, id., or submit a properly-supported pauper application, N.C. Gen. Stat. § 150B-23.2(d). The petition must "state facts tending to establish that the agency named as the respondent has deprived the petitioner of property, has ordered the petitioner to pay a fine or civil penalty, or has otherwise substantially prejudiced the petitioner's rights . . . ." N.C. Gen. Stat. § 150B-23(a). In addition, the petition must show that the named agency "(1) [e]xceeded its authority or jurisdiction; (2) [a]cted erroneously; (3) [f]ailed to use proper procedure; (4) [a]cted arbitrarily or capriciously; or (5) [f]ailed to act as required by law or rule." Id. The filing of such a petition would have entitled Plaintiff to "a hearing without undue delay," id., conducted in a "public" and "impartial manner," N.C. Gen. Stat. § 150B-23(e), and he would have retained the right to judicial review of the final outcome, N.C. Gen. Stat. § 150B-43.

Further, to the extent the Amended Complaint alleges Defendant neglected to perform her lawful obligations (see Docket Entry 4,

-18-

¶ 12 ("[Defendant] was supposed to be un-bias [sic] and was responsible for investigating any and all claims. Instead she did no investigation . . . .")), Plaintiff could have petitioned a state court for a writ of mandamus compelling her to "perform [her] constitutional or statutory duty," In re Officials of Kill Devil Hills Police Dep't, 733 S.E.2d 582, 587 (N.C. App. 2012). Under North Carolina law, a writ of mandamus

> is the proper remedy to compel public officials, such as members of an administrative board, to perform a purely ministerial duty imposed by law, where it is made to appear that the plaintiff, being without adequate remedy, has a present, clear, legal right to the thing claimed and it is the duty of the respondents to render it to him.

Hamlet Hosp. & Training Sch. for Nurses v. Joint Comm. on Standardization, 234 N.C. 673, 680, 68 S.E.2d 862, 867 (1952). Pursuant to this mandamus authority, "a court of competent jurisdiction may determine in a proper proceeding whether a public official has acted capriciously or arbitrarily or in bad faith or in disregard of the law. And it may compel action in good faith in accord with the law." In the Matter of Alamance Cnty. Ct. Facilities, 329 N.C. 84, 106, 405 S.E.2d 125, 136 (1991).

Finally, to the extent Plaintiff could not secure state administrative and judicial review under the NCAPA or state judicial review by way of a mandamus petition, Plaintiff could have petitioned a state court for a writ of certiorari, which North Carolina law authorizes by statute "as heretofore in use," N.C.

-19-

Gen. Stat. § 1-269. "It is well settled in [North Carolina] that *certiorari* is the appropriate process to review the proceedings of inferior courts and of bodies and officers exercising judicial or quasi-judicial functions in cases where no appeal is provided by law." Davis v. Hiatt, 326 N.C. 462, 465, 390 S.E.2d 338, 340 (1990) (internal quotation marks omitted). In Davis, the North Carolina Supreme Court determined that "the petitioner pled sufficient facts to show he did not have a right to appeal from a final decision of an agency. He could then petition for a writ of certiorari to have the case reviewed by the superior court." Id.

In sum, North Carolina provided Plaintiff access to several processes by which he could have sought to vindicate any right purportedly infringed by Defendant. "'[A] procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies.'" Kendall, 650 F.3d at 530 (quoting Elsmere Park Club, L.P. v. Town of Elsmere, 542 F.3d 412, 423 (3d Cir. 2008)); see also Jefferson v. Jefferson Cnty. Pub. Sch. Sys., 360 F.3d 583, 588-89 (6th Cir. 2004) (upholding dismissal of due process claim where "plaintiff failed to demonstrate the inadequacy of the panoply of [state] remedies available to her"); Cotton, 216 F.3d at 1333 (ruling that plaintiff failed to make out "stigma plus" due process claim where plaintiff could have pursued state writ of mandamus).

## B. Right Clearly Established at the Time of Violation

If the Court did find that the Amended Complaint stated a claim for violation of a due process right, Defendant's qualified immunity defense still would require consideration of "whether the state of the law at the time of the events at issue gave the officer a fair warning that h[er] alleged treatment of the plaintiff was unconstitutional." Jones v. Buchanan, 325 F.3d 520, 531 (4th Cir. 2003) (internal quotation marks omitted). Research has revealed no authority that would have placed Defendant on notice that her alleged actions violated Plaintiff's due process rights. Although the Supreme Court and Fourth Circuit have recognized "stigma plus" claims for defamatory communications connected to adverse employment actions by public employers, it has not extended the doctrine such that a private employer's adverse employment action - in which a state actor did not participate - can satisfy the present injury (i.e., "plus") requirement. Further, as previously discussed, no controlling authority establishes that a law enforcement officer certification constitutes a cognizable property interest or that the denial of a name-clearing hearing resulting in a failure to obtain re-employment needed to sustain such certification represents a deprivation of that property right. Finally, no controlling authority calls into question the sufficiency of the procedures made available by North Carolina for the vindication of interests

-21-

of the sort asserted by Plaintiff.  Accordingly, if the Amended Complaint stated a due process claim, Defendant nonetheless would be entitled to qualified immunity.

## IV.  Conclusion

The Amended Complaint fails to state a Section 1983 claim for violation of Plaintiff's due process rights by Defendant either in her official or individual capacity.  Alternatively, the Eleventh Amendment limits any such official capacity claim to prospective injunctive relief and the doctrine of qualified immunity warrants dismissal of any such individual capacity claim.

**IT IS THEREFORE RECOMMENDED** that Defendant's Motion to Dismiss (Docket Entry 25) be granted.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

February 26, 2013

-22-